O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 13-00441 DDP |
| Plaintiff, | <u>(Defendants 1 and 2)</u> |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| PASUMBAL, et al., | |
| Defendants. | [Dkt. Nos. 154, 187] |

Defendants Carlo and Oliva Pasumbal allegedly bribed a United States Citizenship and Immigration Services official to alter their alien files to make it look like the Pasumbals were naturalized U.S. citizens.

On July 10, 2013, Department of Homeland Security officers arrived at Defendants' residence with arrest warrants and a search warrant. Officers announced themselves and Mirandized Defendants, both of whom waived their rights orally and in writing.

Defendants were then handcuffed and placed in the back of a Homeland Security pickup truck. Defendant Oliva Pasumbal asserts that the truck was unmarked, and appeared to be a normal civilian

vehicle. Special Agent Mark Speidel, to whom the vehicle is assigned, contends that a police radio, police lights, and controls are visible inside the cab of the truck.

Defendants were left alone in the back of the truck, and proceeded to have a 15-minute conversation in Tagalog. Unbeknownst to Defendants, a digital recorder was running. Defendant Oliva now moves to suppress the recording of the conversation. Defendant Carlo joins in the motion.

Defendants do not raise any Fourth Amendment argument, as the marital privilege is not rooted in any constitutional right. United States v. Lefkowitz, 618 F.2d 1313. 1319 (9th Cir. 1980). Rather, Defendants argue that the common law marital communication privilege should apply.

The common law marital privilege has two aspects. United States v. Griffin, 440 F.3d 1138, 1143 (9th Cir. 2006). The first, the "adverse spousal testimony" privilege, allows a spouse to refuse to testify, and is not at issue here. The second, the '"marital communications' privilege, protects from disclosure private communications between spouses." Id. "Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, . . . but [] wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." Wolfle v. United States, 291 U.S. 7, 14 (1934); Pereira v. United States, 347 U.S. 1, 6 (1954).

1    The government argues, largely by analogy to Fourth Amendment
2 privacy claims, that Defendants had no objectively reasonable
3 expectation of privacy in the back of a law enforcement vehicle.
4 Defendants' position is somewhat unclear.  Defendants first contend
5 that the Fourth Amendment analysis is inapposite, and that the only
6 relevant question is whether Defendants had a <u>subjective</u> intent to
7 engage in a private discussion.  (Mot. at 7.)  In their reply,
8 however, Defendants argue only that there is a disputed issue of
9 fact as to whether Oliva's expectation of privacy in the back of
10 the Homeland Security truck was reasonable.  (Reply at 2.)
11     The only case Defendant cites is <u>United States v. Neal</u>, 532 F.
12 Supp. 942 (D. Colo. 1982).  There, a husband sought to suppress
13 statements made during a private phone call to his wife.
14 Unbeknownst to the husband, however, the wife had allowed law
15 enforcement to surreptitiously record the call.  <u>Neal</u>, 532 F. Supp.
16 At 944.  The husband also changed telephones and kept his voice low
17 in what the court determined to be an attempt to maintain the
18 confidentiality of the marital communication.  <u>Id.</u> at 947.  Under
19 those circumstances, the court concluded that the presumption of
20 confidentiality should apply, and suppressed the communication.
21 <u>Id.</u> at 950.
22     Even the <u>Neal</u> court acknowledged, however, that the subjective
23 intent of the speaker is not the only relevant factor, recognizing
24 that an ordinary eavesdropper (as opposed to an eavesdropper
25 colluding with one spouse) could testify as to marital statements
26 intended by one or both spouses to be confidential.  <u>Id.</u> 948-49.
27 The Ninth Circuit, too, has implicitly held that subjective intent
28 alone is not the test.  In <u>United States v. Griffin</u>, 440 F.3d 1138

3

(9th Cir. 2006), a husband sent letters marked "Confidential" to his wife from prison.[1] <u>Griffin</u>, 440 F.3d at 1140. Though the husband clearly intended to communicate to his wife in confidence, the court stated that "[t]here is no free-standing marital communications privilege . . . allowing a California prisoner to send confidential letters from prison to his or her spouse." <u>Id.</u> at 1144. Thus, given the circumstances under which the communication was made, the incarcerated spouse's subjective intent was not sufficient to warrant application of the marital communication privilege.

    Here, similarly, the Pasumbals' subjective intent to converse in private cannot control where the couple had already been arrested, Mirandized, and detained in a police vehicle. Indeed, Defendants acknowledge that they knew they were in custody. That the vehicle lacked external markings is insufficient to establish that the Pasumbals had a reasonable expectation of privacy. <u>United States v. Monghur</u>, 588 F.3d 975, 979 (9th Cir. 2009); <u>See</u> <u>also</u> <u>United States v. Parker</u>, 371 Fed. Appx. 749, 750 (9th Cir. 2010) (unpublished disposition) ("[Defendant] had no objectively reasonable expectation of privacy while in police custody in the backseat of a government car."); <u>United States v. Kitchell</u>, 653 F.3d 1206, 1227 (10th Cir. 2011) (recognizing that all circuit courts to reach the issue have agreed that there is no expectation of privacy in a police car). Contrary to Oliva's declaration, the police radio, light, and controls are clearly visible from the back seat of the truck. (Declaration of Mark Speidl, Exhibit A

---

[1] The husband also marked the letters "Attorney at Law," as his wife was also his attorney.

4

1  (photograph).)  Furthermore, it is not clear to the court that
2  Carlo held even a subjective belief that the conversation was
3  private, as he stated, "Don't say anything anymore.  We might be
4  (unintelligible)."  (Speidl. Decl., Ex. A at 5.)
5       Under these circumstances, Plaintiffs have not shown a
6  reasonable expectation of privacy or that the marital privilege
7  communication should apply.  Accordingly, the Motion to Suppress is
8  DENIED.
9
10
11
12
13
14
15 IT IS SO ORDERED.
16
17
18 Dated: November 26, 2013
19                                    DEAN D. PREGERSON
                                      United States District Judge
20
21
22
23
24
25
26
27
28

1  (photograph).)  Furthermore, it is not clear to the court that
2  Carlo held even a subjective belief that the conversation was
3  private, as he stated, "Don't say anything anymore.  We might be
4  (unintelligible)."  (Speidl. Decl., Ex. A at 5.)
5       Under these circumstances, Plaintiffs have not shown a
6  reasonable expectation of privacy or that the marital privilege
7  communication should apply.  Accordingly, the Motion to Suppress is
8  DENIED.
9
10
11
12
13
14
15 IT IS SO ORDERED.
16
17
18 Dated: November 26, 2013
19                                    DEAN D. PREGERSON
                                       United States District Judge
20
21
22
23
24
25
26
27
28